**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE MOORE, on behalf of himself and others similarly situated, | : : : : : : : : : : : : / | Case No. 1:19-cv-03703 |
| Plaintiff, | | |
| v. | | |
| MEGA ENERGY, LP, | | **Jury Trial Demanded** |
| Defendant. | | |

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. Plaintiff George Moore ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Mega Energy, LP ("Mega Energy") made repeated, nonconsensual autodialed and prerecorded-voice telemarketing calls to the cellular telephone numbers of Plaintiff and others to promote its residential energy services in violation of the TCPA. The calls were also made to some individuals despite their phone number's presence on the National Do Not Call Registry, such as Plaintiff.

3. Mega Energy also made telemarketing calls to individuals in the absence of any "do not call" policy or training, as well as to individuals who previously indicated that they no longer wanted to be contacted.

4. Plaintiff seeks injunctive and monetary relief for all similarly-situated persons injured by Mega Energy's conduct.

5. Plaintiff never consented to receive the calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiff bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

6. A class action is the best means of obtaining redress for Defendant's wide-scale illegal telemarketing, and it is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

7. Plaintiff George Moore is a resident of Illinois in this District.

8. Defendant Mega Energy, LP is a Texas limited partnership with a registered agent of Javed Meghani, 2150 Town Square Place, Suite 711, in Sugar Land, Texas 77479. Defendant Mega Energy places telemarketing calls into this District, as it did with the Plaintiff. Mega Energy provides energy services to residents in the State of Illinois.

**Jurisdiction & Venue**

9. The Court has federal question subject matter jurisdiction over these TCPA claims, *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012), as well as supplemental jurisdiction over the Illinois ATDA claims pursuant to 28 U.S.C. § 1367(a), as such claims are so closely related so as to form part of the same case or controversy—namely, Defendant's wrongful telemarketing through the use of automatic dialing equipment and a prerecorded voice to Plaintiff and others without consent.

10. The Court has personal jurisdiction over Defendant and venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Moore is a resident of this District, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit. Defendant's services that were promoted on those calls were also provided in this District, and a substantial portion of the events giving rise to this cause of action occurred in this District.

**TCPA Background**

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes." 47 U.S.C. § 227(b)(1)(B). The TCPA also prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [("autodialer" or "ATDS")] or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA provides a private cause of action to persons who receive such calls. *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls

3

are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

The TCPA's Requirement to Have Sufficient Policies
In Order to Honor Requests to Stop Contacting Individuals

16. The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

17. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call' systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

18. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

19. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id*. at 8765, ¶ 23. 19.

20. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

21. It accordingly placed the burden on telemarketers to implement and prove the implementation of their compliance procedures.

22. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

23. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d)(1, 2, 3, 6).

24. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

25. These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

26. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

### Illinois Automatic Telephone Dialers Act

27. In Illinois, the Automatic Telephone Dialers Act ("ATDA") also prohibits, inter alia, "play[ing] a prerecorded message placed by an autodialer without the consent of the called party". 815 ILCS 305/15(d). The ATDA provides for treble actual damages, statutory damages of $500 per violation, and costs and reasonable attorneys' fees. 815 ILCS 305/30.

28. Passage of the 2013 amendments to the ATDA providing for statutory damages, as invoked here, was unanimous in the Illinois legislature.

### The Growing Problem of Automated Telemarketing

29. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

30. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

31. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

32. The news media has reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. *E.g.,* Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Him*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-him-1530610203.

33. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

34. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited May 17, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

35. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited May 17, 2019).

**Factual Allegations**

36. Mega Energy provides commercial and residential energy services.

37. Mega Energy uses telemarketing to promote its services.

38. Recipients of these calls, including Plaintiff, did not consent to receive them.

39. Mega Energy's telemarketing efforts include the use of predictive dialers and prerecorded-voice calls.

40. The Defendant uses this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone for autodialed calls or who respond to the prerecorded-voice call. Through this method, the Defendant shifts the burden of wasted time to the consumers it calls with unsolicited messages.

### Calls to Mr. Moore

41. Plaintiff's telephone numbers in question, (630) XXX-3205 and (630) XXX-3200, are residential numbers registered to a cellular telephone service.

42. The numbers have been on the National Do Not Call Registry for more than ten years prior to the receipt of the calls at issue.

43. On August 9, 2018, August 17, 2018, September 12, 2018, and October 4, 2018, the Plaintiff received prerecorded telemarketing calls from the Defendant.

44. The August 9, 2018 and October 4, 2018 calls were sent to (630) XXX-3205.

45. The August 17, 2018 and September 12, 2018 calls were sent to (630) XXX-3200.

46. On the fifth call, which was sent on December 20, 2018, to (630) XXX-3200, Mr. Moore responded to the prerecorded message.

47. In order to confirm the identity of the calling party, the Plaintiff listened to the telemarketing pitch and confirmed that Mega Energy's services were being promoted.

48. In order to verify that Mega Energy's services were truly being offered, the Plaintiff received a verification number.

49. On January 6, 2019, the Plaintiff sent an e-mail to Mega Energy, which stated:

To Whom It May Concern:

I wanted to reach out regarding a telemarketing concern. Recently, I have been receiving calls offering an electric energy discount. The caller stated that the supplier offering the discount was Mega Energy with phone number 855-810-6342…

I look forward to your response. At the same time, I would like to take this opportunity to request that Mega Energy stop calling and place the phone numbers on your do-not-call list.

50. The Plaintiff did not receive a response.

51. The Plaintiff sent another e-mail on January 22, 2019.

52. The Plaintiff did not receive a response.

53. Despite these communications, the Plaintiff was sent another call on May 17, 2019 purporting to offer Mega Energy services.

54. The call was sent to (630) XXX-3200.

55. In order to verify that Mega Energy's services were truly being offered, the Plaintiff received a verification number.

56. The calls were made with an ATDS, as it would be illogical to manually dial a number only to send a prerecorded message, which was played on the first five calls.

57. The Caller ID on the calls were not related to Mega Energy.

58. To program a different Caller ID typically takes a computer program associated with ATDS equipment.

59. Plaintiff and all members of the class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were subjected to annoying

and harassing calls that constitute a nuisance. The calls also occupied Plaintiff's telephone lines from legitimate communication.

60. Plaintiff and the other class members have not provided Defendant with their prior express written consent to place telemarketing calls to their phone numbers.

## Class Action Allegations

61. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff bring this action on behalf of the following classes of persons or entities similarly situated throughout the United States.

62. The classes of persons Plaintiff proposes to represent are tentatively defined as:

INTERNAL DO NOT CALL LIST CLASS

All persons within the United States who: (1) Defendant (or an agent acting on behalf of Defendant) called (2) with two or more telemarketing calls in a 12-month period.

DO NOT CALL LIST CLASS

All persons within the United States to whom: (a) Defendant or a third party acting on its behalf made at least two telephone solicitation calls during a 12-month period; (b) to a residential telephone number.

AUTODIALED TCPA CLASS

All persons within the United States to whom: (a) Defendant or a third party acting on its behalf made one or more non-emergency telephone calls; (b) to a residential telephone number; (c) using a prerecorded voice.

IL ATDA SUBCLASS

All Illinois residents to whom: (a) Defendant or a third party acting on its behalf made one or more non-emergency telephone calls; (b) to a residential telephone number; (c) using a prerecorded voice.

63. Excluded from the classes are the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

64. The classes as defined above are identifiable through phone records and phone number databases.

65. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

66. Plaintiff is a member of each of the classes.

67. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

   (a) whether Defendant utilized an automatic telephone dialing system or autodialer to make its calls to members of the Autodialed TCPA Class or IL ATDA Subclass, respectively;

   (b) whether Defendant systematically made multiple telephone calls to Plaintiff and members of the National Do Not Call Registry Class;

   (c) whether Defendant made calls to Plaintiff and members of the Classes without first obtaining the requisite consent or permission to make the calls;

   (d) Whether Defendant maintained a written "do not call" policy;

   (e) Whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

   (f) Whether Defendant recorded or honored "do not call" requests;

   (g) whether Defendant's conduct constitutes a violation of the TCPA and/or ATDA; and

   (h) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

68. Plaintiff's claims are typical of the claims of class members.

11

69. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes and is represented by counsel skilled and experienced in class actions, including TCPA class actions.

70. The actions of the Defendant are generally applicable to the classes as a whole and to Plaintiff.

71. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

72. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

73. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violations of the TCPA's Do Not Call Provisions
### (on behalf of Plaintiff and the Do Not Call List Class)

74. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

75. Defendant violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by initiating multiple solicitation calls within a 12-month period to residential telephone numbers despite their registration on the National Do Not Call Registry, without signed, written prior express invitation or permission.

12

76. The Defendant's violations were negligent and/or willful or knowing.

77. Plaintiff and DNC List Class Members are entitled to an award of up to $500 in statutory damages per violation (or up to $1,500 in damages where the Court finds such violation to have been willfully or knowingly committed), pursuant to 47 U.S.C. § 227(c)(5), as well as injunctive relief.

## Count Two:
## Violation of the TCPA's Automated Telemarketing Call Provisions
## (on behalf of Plaintiff and the Autodialed TCPA Class)

78. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

79. The Defendant violated the TCPA by (a) initiating telephone solicitations to the Plaintiff's and other class members' cellular telephone lines using a prerecorded message, or (b) by the fact that others made those calls on its behalf.

80. The Defendant's violations were negligent and/or willful or knowing.

81. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future.

## Count Three:
## Violations of the TCPA's Internal Do Not Call Provisions
## (on behalf of Plaintiff and the Internal Do Not Call List Class)

82. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

83. Defendant placed numerous calls for telemarketing purposes to Plaintiff's and Internal DNC List Class Members' telephone numbers.

84. Defendant did so despite not having a written policy pertaining to "do not call" requests.

85. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list.

86. Defendant did so despite not recording or honoring "do not call" requests.

87. Defendant placed two or more telephone calls to Plaintiff and Internal DNC List Class Members in a 12-month period.

88. The Defendant's violations were negligent and/or willful or knowing.

89. Plaintiff and Internal DNC List Class Members are entitled to an award of up to $500 in statutory damages per violation (or up to $1,500 in damages where the Court finds such violation to have been willfully or knowingly committed), pursuant to 47 U.S.C. § 227(c)(5), as well as injunctive relief.

### Count Four:
### Violations of the ATDA, 815 ILCS 305/1 *et seq.*
### (on behalf of Plaintiff and the IL ATDA Subclass)

90. Plaintiff realleges and incorporates the foregoing allegations as if set forth fully herein.

91. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

92. Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a). A "recorded message" refers to "any taped communication soliciting the sale of goods or services

14

without live voice interaction." 815 ILCS 305/5(c).[1]

93. The Defendant did not have the consent of Plaintiff or the other members of the IL ATDA Subclass to play a prerecorded message placed by an autodialer.

94. Nonetheless, the Defendant called the phones of Plaintiff and the other members of the IL ATDA Subclass using a telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message. No human being physically dialed each digit of Plaintiff's or the other IL ATDA Subclass members' phone numbers to connect their telephones with a recorded message.

95. Consequently, Defendant violated the ATDA by playing a prerecorded message placed by an autodialer during calls to the phones of Plaintiff and the other IL ATDA Subclass members, without such persons' consent.

96. As a result of Defendant's conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the IL ATDA Subclass were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

**Relief Sought**

For himself and all Class members, Plaintiff requests the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

---

[1] The term "autodialer" or "autodialer system" does not include "device[s] associated with a burglar alarm system, voice message system or fire alarm system." 815 ILCS 305/5(a).

D. A declaration that Defendant and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA and the Illinois ATDA;

E. An order enjoining Defendant and/or their affiliates, agents, and/or other related entities, as provided by law, from using prerecorded messages;

F. An award to Plaintiff and the Classes of damages, as allowed by law;

G. Attorneys' fees, costs, and expenses, as permitted by law;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and

I. Such other and further relief as the Court deems necessary, just, and proper.

## Jury Demand

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: June 3, 2019

Respectfully submitted,

GEORGE MOORE, on behalf of himself and others similarly situated

By: */s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln St., Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff*

**Document Preservation Demand**

  Plaintiff hereby demands that Defendant take affirmative steps to preserve all recordings, data, databases, call records, consent to receive autodialed or artificial or prerecorded voice calls, e-mails, recordings, documents, and all other tangible things that relate to the allegations herein, Plaintiff, or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale, or file associated with Plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of Defendant.

                      /s/ Alexander H. Burke