IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MOORE, on behalf of himself and others similarly situated, | : : : | Case No. 1:19-cv-03703 |
| Plaintiff, | : : | |
| v. | : : | |
| MEGA ENERGY LP, | : : | **Jury Trial Demanded** |
| Defendant. | : : / | |

**DEFENDANT MEGA ENERGY, LP'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER REQUIRING DEFENDANT TO GATHER RECORDS**

**I.  Introduction**

Three weeks have passed since Mega Energy LP ("Mega") identified the name and address of its Illinois[1] telemarketing Vendor ("Vendor").  During that time, Mega Energy: (a) reiterated to the Vendor that all records related to Mega should be preserved indefinitely; and (b) offered to provide Plaintiff with the Vendor's email address or otherwise facilitate communication.  Plaintiff ignored Mega's offers and, to date, has not even attempted to contact Mega's Vendor to inquire about record preservation.

---

[1] During the July 18, 2019 Status Hearing, Mega inadvertently stated that the case involved an "Ohio" vendor, which is reflected in the Court's July 18, 2019 Order (as opposed to an "Illinois" vendor). (D.E. 19.)  Plaintiff's claims do not, however, have anything to do with Ohio.  Plaintiff resides in Illinois, alleges to have received calls in Illinois on an Illinois number, and Mega's corporate affiliate provides services in Illinois.  Mega's counsel accidentally referenced Ohio instead of Illinois during the Status Hearing because it is involved in a similar TCPA lawsuit with Plaintiff's counsel in Ohio.  Immediately after the Court entered its Scheduling Order, Counsel for Mega clarified the discrepancy with Plaintiff, who did not raise further concerns about the issue.

1

Having done nothing himself, Plaintiff asks the Court to order Mega to prosecute Plaintiff's claims for him. Black-letter law, including this Court's own Individual Procedures, compels the conclusion that Plaintiff's Motion for An Order Requiring Defendant to Gather Records of its Telemarketing Campaign (the "Motion") fails for several, independent reasons.

As a threshold matter, Plaintiff's Motion is procedurally improper and must be denied on that basis alone. Plaintiff's counsel did not confer with Mega's counsel about the Motion and failed to include a statement of conferral in violation Local Rule 37.2 and this Court's Individual Procedures concerning Discovery Motions. Instead, Plaintiff made an individual settlement demand and then filed this Motion without warning the next day, on a Saturday, for leverage—forcing Mega to decide between paying whatever Plaintiff demanded or incurring considerable expense responding to an improper Motion that the Court's own rules make clear it "will not consider."

But even assuming Plaintiff met his conferral obligations, the Motion is legally meritless, several times over. First, it is premised on the admitted and baseless "presumption"—that is Plaintiff's own word—that the Vendor is fly-by-night because it is foreign. Plaintiff's own cases (which are vastly different from this case) make clear that a third party's location, without far more, is insufficient to justify his extraordinary request. Second, there is no mechanism under the Federal Rules to force a party to require an unaffiliated entity to turn over documents, especially documents that the party has no legal right to. Third, the Court already addressed and rejected Plaintiff's argument during the July 18, 2019 Status Hearing, and the reason underlying the Court's Order (which only permitted Plaintiff to send a subpoena to the Vendor) is unaffected by the Vendor's location. That is especially true given that Plaintiff has made <u>no attempt</u> to contact the Vendor himself.

Finally, the Motion's patent procedural and substantive deficiencies require that Mega be reimbursed for the expenses incurred responding to it on an expedited basis. This is especially true given that the Motion is clearly being used as a tool for settlement leverage, not to resolve a legitimate discovery dispute.

Accordingly, Mega respectfully requests the Court deny Plaintiff's Motion as procedurally improper and substantively meritless, and award Mega the fees it incurred in responding to the Motion.

## II.   Argument

### A.   Plaintiff's Motion Should be Denied Because He Failed to Confer with Mega in Violation of Local Rule 37.2 and this Court's Individual Procedures.

Plaintiff's Motion should be denied as procedurally deficient because Plaintiff failed to confer with Mega and, as a consequence, failed to include a conferral statement in the Motion. The Local Rules and this Court's Individual Procedures require both.

In particular, Local Rule 37.2 states that the Court "**shall hereafter refuse to hear** any and all motions for discovery and the production of documents . . . unless the motion" includes a statement of conferral with opposing counsel. *See* L.R. 37.2 (emphasis added). Motions that lack the required statement are subject to automatic denial. *See, e.g.*, *Paulcheck v. Union Pac. R. Co.*, No. 09 C 4226, 2010 WL 1727856, at *1 (N.D. Ill. Apr. 29, 2010) ("The motion is noncompliant with Local Rule 37.2, which is reason enough to deny it."); *Allen v. City of Chicago*, No. 09-C-243, 2010 WL 118372, at *1 (N.D. Ill. Jan. 8, 2010) ("Pursuant to Local Rule 37.2, the court will not hear a discovery motion unless the parties have made 'good faith attempts to resolve differences' through 'consultation in person or by telephone.'"). Similarly, this Court's Individual Procedures mandate that before filing **any** motion, "the movant's counsel **must** ask opposing counsel whether there is an objection to the motion, and the motion must

3

state that the conferral occurred or, if not, why not." *See* Hon. Judge Chang's Individual Procedures Regarding Motion Practice (emphasis original). The Court's Individual Procedures also state that the Court "**will not consider** any discovery motion unless the movant has complied with the meet-and-confer requirement of Local Rule 37.2." *See* Hon. Judge Chang's Individual Procedures Regarding Discovery & Discovery Motions (emphasis added).

Here, Plaintiff failed to confer with counsel for Mega prior to filing the Motion, despite having weeks to do so. (*See* Ex. A Decl. of Ryan Watstein ("Ex. A") ¶¶ 4–7.) That the Motion lacks the required conferral statement mandated by the Court's Local and Individual Procedures only underscores Plaintiff's failure. Instead, shortly before filing the motion, Plaintiff did the opposite of conferring, if there is such a thing: he made an individual settlement demand and requested that Mega respond within a week, so Plaintiff could determine if and how it could then address next steps, if the case did not settle. (*Id.* ¶ 6.) Ignoring his own email and without waiting to hear back from Mega, Plaintiff then turned around and filed the Motion the next day, at 6 p.m. on a Saturday. (*Id.* ¶ 7.) And he unilaterally set the Motion for hearing three business days later, manufacturing a story that it was needed to prevent "imminent destruction," [2] even though: (a) Mega disclosed and name and contact information of its Vendor and offered to provide the Vendor's email address and to facilitate communication, nearly two weeks prior; (b) Plaintiff did not respond to the offer; and (c) to date, Plaintiff has made zero effort to contact the

---

[2] Relatedly, Plaintiff waited ten months after his claims allegedly arose to file suit against Mega. For an ordinary layperson plaintiff, that would be irrelevant. During that time, however, and with the same counsel, Plaintiff filed numerous other TCPA lawsuits. Coupled with his failure to confer with Mega or even attempt to contact the Vendor, Plaintiff's delay in filing suit renders his fabricated claims of "emergency" even more tenuous.

4

Vendor. (*Id.* ¶¶ 4–7.) Plaintiff's Motion is procedurally improper and must be denied for this reason alone.[3]

### B. Plaintiff's Motion Should be Denied as Meritless Because His Preservation Concerns are Admittedly Speculative, Unsupported by the Cases He Cites, and Contrary to the Federal Rules.

Setting these dispositive procedural deficiencies aside, Plaintiff's Motion should also be denied as legally meritless, on several levels. As his own Motion and the cases cited therein make clear, Plaintiff's preservation concerns in this case are speculative and unfounded. His request that Mega assist in the prosecution of Plaintiff's case by obtaining records from a third party Mega has no legal right to control is also contrary to the Federal Rules and Due Process. Finally, his preservation concerns were already addressed by the Court during the July 18, 2019 Status Hearing.

#### i. Plaintiff's Concerns Are Speculative and Based Only on the Assumption that the Vendor is Untrustworthy Because It is Foreign.

First, that the Vendor is foreign does not somehow mean it is fly-by-night or that relevant records are at "risk of imminent destruction." (D.E. 20 at 2.) Even Plaintiff's cases make clear that courts only order relief similar to what Plaintiff now seeks in response to unique preservation issues not present here, not unfounded assumptions about foreign entities. (*Id.* at 2–3.)

For instance, in *Fitzhenry v. Career Education Corporation, Inc*, (cited by Plaintiff at page 2), the court only granted plaintiff's motion because: (a) the defendant apparently did not

---

[3] To make matters worse, Plaintiff's Motion does not address the cost and expense of his request. This omission is but another reason why the conferral requirement is so crucial and emphasized by this Court. *See* Hon. Judge Chang's Individual Procedures Regarding Discovery & Discovery Motions ("The Court believes that parties can and should work out most discovery disputes and thus discourages the filing of discovery motions. The Court will not consider any discovery motion unless the movant has complied with the meet-and-confer requirement of Local Rule 37.2.")

5

advise its vendor to preserve records; and (b) Plaintiff was unable, after attempting to do so, to "obtain or secure preservation of records through other means." *See* 1:14-cv-10172, D.E. 92 (N.D. Ill Dec. 12, 2015).[4] Similarly, in *Johansen v. Ameriquote, Inc. et al*, (cited by Plaintiff at pages 2–3), the court granted plaintiff's motion because defendant failed to identify the vendors or confirm they were "advised to preserve discovery." 1:16-cv-04108-MLB, D.E. 43 (N.D. Ill October 3, 2017).

Unlike in *Fitzhenry* and *Johansen*, which were arguably wrongly decided in any event as discussed below, there are no unique record preservation concerns here. Mega has never indicated that there are issues with record reservation like the defendants in those cases and Plaintiff has not even attempted—let alone attempted and failed—to secure the preservation of records himself. Thus, it is evident from Plaintiff's Motion that his primary concern is that the Vendor is located overseas. That does not justify Plaintiff's extraordinary request, which Plaintiff's counsel knows because he also represented the plaintiffs in *Fitzhenry* and *Johansen*.

And Plaintiff's stated concern about telephone carrier retention periods—premised on a chart from August of 2010—is entirely irrelevant. Plaintiff has no reason to believe that the Vendor's retention periods have anything to do with the retention periods employed by U.S. cellular carriers a decade ago. Indeed, Plaintiff concedes in his Motion that his concerns are speculative: "**[m]aking a further presumption** . . . records of calling activity in Pakistan are

---

[4] In *Fitzhenry*, Plaintiff's counsel in this case also wrote, "The Plaintiff informed this Court during the initial status conference of the risk of harm of the destruction of calling records and . . . [defendant] was directed to identify the vendor. . . . Following this disclosure, the Plaintiff has made multiple attempts to contact [the vendor] to ensure preservation of relevant information, without success." *See* 1:14-cv-10172, D.E. 92 at 5. The same events occurred here, with the notable exception that Plaintiff has made <u>absolutely no effort</u> to contact Mega's vendor or otherwise attempt to inquire about its preservation efforts.

subject to a shorter retention period." (D.E. 20 at 6.) Again, Plaintiff's "presumption" based on the Vendor's location is insufficient to justify his extraordinary Motion.

           ii.      <u>The Federal Rules Do Not Support Plaintiff's Request to Force Mega to Force a Third Party to Turn Over Records.</u>

Perhaps most importantly, courts across the country routinely deny the type of request made by Plaintiff, and for good reason: courts are powerless under the Federal Rules and the Due Process clause to order a defendant to force an independent third party, over which the defendant lacks legal control, to produce records. *See, e.g.*, *Cody Foster & Co. v. Urban Outfitters, Inc.*, No. 8:14CV80, 2015 WL 4366162, at *6 (D. Neb. July 16, 2015) ("Defendants cannot be ordered to produce what they do not have and cannot reasonably obtain. **And Defendants do not have the ability to demand or compel the production of the [records] from third-parties on demand. <u>Plaintiff has presented no evidence to indicate Defendants have control of [evidence] in the hands of third-parties</u>**.") (emphasis added); *Allison v. Mavic, Inc.*, No. 5:13-CV-180-DCR-REW, 2014 WL 12650099, at *2 (E.D. Ky. Oct. 30, 2014) ("the Court cannot compel Defendant to produce documents and items in [a third party's] possession" even though "the two entities enjoy a close relationship doubtlessly beneficial to both their businesses"); *LDM Grp., LLC v. Akers*, No. 4:12-CV-812-JAR, 2013 WL 1703927, at *1 (E.D. Mo. Apr. 19, 2013) (granting motion for reconsideration, holding that the Court cannot compel defendant to produce documents "in the possession, custody, and control" of a "non-party to this case"); *Davis v. Kissinger*, No. CIVS040878GEBDADP, 2009 WL 63565, at *2 (E.D. Cal. Jan. 8, 2009) ("**This Court cannot compel the defendant to produce documents that . . . are not**

7

**in her possession or control" where the "Plaintiff has made no showing that the defendant [ ] has control")** (emphasis added).[5]

To date, Plaintiff has not made any showing that Mega is in control of documents that are in the possession of its Vendor. Nor could he: Mega does not have a contractual right, and thus legal ability, to obtain the documents Plaintiff seeks. In short, the duty to preserve does not mean that Mega can be forced to assist Plaintiff in the prosecution of his lawsuit against Mega.

Ironically, the Court recognized this in the hearing it conducted immediately before the parties' initial Status Hearing in this case. *See Torzewski v. COSCO Shipping Lines N. Am., Inc.*, 1:18-cv-04266, D.E. 68–69 (N.D. Ill.); (collectively attached as Ex. B). There, the Court refused to order the defendant to produce an employee of a foreign corporate affiliate for a deposition because the Federal Rules do not permit such relief. *Id*. There is even <u>less</u> justification for Plaintiff's similar request here because the Vendor is a wholly separate and independent corporate entity, unaffiliated with Mega by any common ownership or control.

       iii.    <u>The Court Already Addressed Plaintiff's Preservation Concerns at the Status Hearing</u>.

Finally, Plaintiff's request that the Court order Mega to force a third-party to act is simply a pretext to revisit the Court's discovery schedule. Indeed, at the July 18, 2019 Status Hearing, the Court denied Plaintiff's request that Mega take possession of the Vendor's records because it would be improper to presume the Vendor was unscrupulous without a factual basis. He cannot now ask the Court to reconsider part of its Order under the guise of a discovery motion.

And as to the purpose of the Court's July 18, 2019 Order, it was intended to effect a "litigation-hold" to allay Plaintiff's general concerns about record preservation. (D.E. 19.) That

---

[5] *See also, e.g.*, *Arma Yates, LLC v. Arma Care Ctr., LLC*, No. 15 C 7171, 2018 WL 2193141, at *3 (N.D. Ill. May 14, 2018); *Lyon Metal Prod., Inc. v. Supreme Equip. & Sys. Corp.*, No. 83 C 7402, 1985 WL 4513, at *3 (N.D. Ill. Dec. 4, 1985).

Mega's Vendor is located overseas does not change the reasoning underlying the Court's Order or Plaintiff's ability to send them it a hold notice (which Mega has already done in any event). That is especially true considering that Mega: (a) voluntarily offered to identify the Vendor at the July 18, 2019 Status Hearing, long before it would have otherwise been required to do so; and (b) offered to facilitate Plaintiff's communication with the Vendor by providing the Vendor's email address.

### C. The Court Should Award Mega the Fees it Incurred in Responding to Plaintiff's Patently Improper Motion.

As the foregoing makes clear, Plaintiff fabricated a claim of "emergency" and filed his Motion without having conferred with Mega, mandating the Motion's automatic denial under the Local and this Court's Individual Procedures. Plaintiff apparently did so not to address a legitimate "emergency," but to force Mega to make a Hobson's choice: accept Plaintiff's settlement demand without question or pay its counsel to respond to a discovery Motion. (*See* Ex. A ¶ 5–6.)

Under these circumstances, the Federal Rules require that Mega be reimbursed for the expenses it incurred in responding to Plaintiff's patently deficient Motion on an expedited basis:

> If the motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B) (emphasis added). Indeed, here, Plaintiff's failure to even attempt to contact the Vendor or adhere to the Court's basic rules—which counsel is clearly aware of given they have complied with them in the past when filing nearly-identical motions—forecloses the possibility that his Motion was substantially justified under any interpretation. Plaintiff's

9

conduct also compels the conclusion that it would be "unjust" for the Court <u>not</u> to require Plaintiff to bear the expense of this unnecessary sideshow, not the other way around.

### III.     Conclusion

As set forth above, Plaintiff's Motion should be denied as both procedurally improper and substantively meritless.  The impropriety of Plaintiff's Motion is only compounded by Plaintiff's failure to make any efforts to contact Mega's Vendor, including failing to even respond to Mega's offer to facilitate communication.  For these reasons, Mega respectfully requests that Plaintiff's Motion be denied and the Court award Mega the expenses incurred responding to the Motion.

DATED: August 7, 2019.

                                            Respectfully submitted,

                                          **KABAT CHAPMAN & OZMER LLP**

                            By: */s/ Ryan D. Watstein*
                                 Ryan D. Watstein
                                 (admitted *pro hac vice*)
                                 GA Bar No. 266019
                                 171 17th Street NW, Suite 1550
                                 Atlanta, Georgia 30363
                                 Telephone: (404) 400-7300
                                 Facsimile: (404) 400-7333

                                 *Counsel for Defendant Mega Energy, LP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2019, I filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the following counsel of record in this action:

> By: */s/ Ryan D. Watstein*
> Ryan D. Watstein (admitted *pro hac vice*)
>
> *Counsel for Defendant Mega Energy, LP*